UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIM WHITLEY                                                            CIVIL ACTION

VERSUS                                                                NO. 18-6620

PREMIER NISSAN, L.L.C. AND                   SECTION: M (5)
NISSAN NORTH AMERICA, INC.

## ORDER & REASONS

Before the Court is a Motion to Remand filed by plaintiff Kim Whitley ("Whitley"),[1] to which defendant Nissan North America, Inc. ("Nissan") responds in opposition,[2] and in support of which Whitley replies,[3] and in further opposition to which Nissan has filed two sur-replies.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

I.     BACKGROUND

This case involves personal injuries that were allegedly caused by a defective automobile. On February 6, 2017, Whitley purchased a preowned 2017 Nissan Pathfinder from defendant Premier Nissan ("Premier").[5] The vehicle was manufactured by Nissan.[6] Whitley alleges that on February 25, 2017, she put the vehicle in park, switched off the engine, and was exiting the vehicle when it began rolling in reverse, hitting Whitley's legs, and dragging her approximately ten feet until the vehicle came to a stop.[7] Whitley claims that she sustained injuries to her legs, arms, and shoulders as a result of the incident.[8]

---

[1] R. Doc. 9.
[2] R. Doc. 12.
[3] R. Doc. 18.
[4] R. Docs. 22 & 25.
[5] R. Doc. 1-2 at 3.
[6] *Id.*
[7] *Id.*
[8] *Id.*

On February 22, 2018, Whitley filed the instant action in the 29th Judicial District Court, Parish of St. Charles, State of Louisiana, against Premier and Nissan seeking damages for the injuries she allegedly sustained as a result of the February 25, 2017 accident.[9] Whitley alleges that her injuries were "caused by a characteristic of the vehicle that rendered it unreasonably dangerous in construction or composition."[10] Whitley further alleges that Premier "knew or should have known that the vehicle was defective and failed to declare it" and that Nissan manufactured a vehicle that had an unreasonably dangerous characteristic when it left Nissan's control.[11]

After receiving Whitley's discovery responses and discerning that there is more than $75,000 in controversy, Nissan removed this action to the United States District Court for the Eastern District of Louisiana alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[12] Nissan alleges that complete diversity exists between the properly joined parties, because it is a citizen of California and Tennessee and Whitley is a citizen of Louisiana.[13] Nissan further alleges that, although Premier is a citizen of Louisiana, its citizenship should not be considered for the purpose of determining diversity subject-matter jurisdiction because Whitley has no basis for recovery against Premier; thus Whitley improperly joined Premier to defeat federal diversity subject-matter jurisdiction.[14]

## II. PENDING MOTION

On August 10, 2018, Whitley filed the instant motion to remand arguing that Premier is properly joined, and as a result, this Court lacks diversity subject-matter jurisdiction.[15] Whitley argues that, because Premier conducted a pre-sale inspection of the vehicle, it should be deemed a

---

[9] *Id.* at 2.
[10] *Id.* at 3.
[11] *Id.* at 3-4.
[12] R. Doc. 1 at 1 & 11-13.
[13] *Id.* at 4.
[14] *Id.* at 4-5.
[15] R. Doc. 9.

manufacturer and held liable under the Louisiana Products Liability Act ("LPLA").[16] Whitley also argues that she stated a claim against Premier for negligence by alleging that Premier knew or should have known of the alleged defect in the vehicle and failed to disclose it.[17]

Nissan opposes Whitley's motion to remand arguing that the removal was proper, because Premier is improperly joined.[18] Nissan argues that there is no basis under the LPLA upon which to hold Premier liable as a manufacturer.[19] Nissan points out that Whitley testified in her deposition that she knew when she purchased the vehicle that Nissan, not Premier, manufactured it.[20]

Nissan also argues that Whitley has not stated a negligence claim against Premier, because the fact that Premier conducted a pre-sale inspection demonstrates that Premier did not have either actual or constructive knowledge of the purported defect.[21] Nissan submits an affidavit from Craig P. Collins ("Collins"), Premier's general manager, stating that Premier did not know of the alleged defect and would not have sold the vehicle to Whitley if it had known.[22] Nissan further submits excerpts from the deposition of Whitley's purported expert engineer, Edward Carrick ("Carrick"), in which Carrick testified that he did not find any malfunction in the vehicle, that he did not know how Premier would have been able to find something wrong with the vehicle, and that it is his opinion that Premier did not do anything wrong.[23]

---

[16] R. Doc. 9-1 at 5-6.
[17] *Id.* at 6-7.
[18] R. Doc. 12.
[19] *Id.* at 5-8.
[20] R. Doc. 22 -1 at 3-4.
[21] R. Doc. 12 at 8-12.
[22] R. Doc. 1-7 at 1-2.
[23] R. Doc. 25-1 at 3-5.

3

## III. LAW & ANALYSIS

### A. Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Id.*

### B. Improper Joinder

Pursuant to § 1332, a federal court may exercise diversity subject-matter jurisdiction "over a civil action between citizens of different States if the amount in controversy exceeds $75,000." *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016); *see also* 28 U.S.C. § 1332. Typically, there must be "complete diversity" between the parties, meaning that no plaintiff may be a "citizen of the same State as any defendant." *Id.* at 136.

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 2018 WL 3814579, at *2 (5th Cir. Aug. 9, 2018) (quoting and citing 28 U.S.C. § 1441(b)(2); *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)). Generally, the party asserting federal jurisdiction, *i.e.*, the removing party, "'bears the burden of showing that federal jurisdiction exists, and that removal was proper.'" *Id.* (quoting *Manguno*, 276 F.3d at 723).

However, the lack of complete diversity will not render an action non-removable if a party has been improperly joined. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, ... the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136. The defendant must prove improper joinder by showing either: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[24] *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004)). The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).

"Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a ***reasonable*** possibility of recovery, not merely a ***theoretical*** one." *Ross*, 344 F.3d at 462 (emphasis in original).

In *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (*en banc*), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff improperly joined a nondiverse defendant. A court first looks at the complaint, and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573. However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a

---

[24] Nissan does not allege that Whitley committed actual fraud in pleading the jurisdictional facts. *See* R. Doc. 1.

5

summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citations omitted). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in" the plaintiff's favor. *Id.* (citation omitted).

Whitley argues that Premier should be deemed to be a manufacturer of the vehicle under the LPLA due to its pre-sale inspection. The LPLA establishes "the exclusive theories of liability [under Louisiana law] for manufacturers for damages caused by their products." La. R.S. 9:2800.52. The law defines a "manufacturer" as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien

6

> manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. R.S. 9:2800.53. "Seller" is defined as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." *Id.*

Courts in Louisiana have held that automobile dealers are not manufacturers under the LPLA. *Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013) (car dealer was not the manufacturer); *Loper v. Nat'l Union Fire Ins. Co.*, 2001 WL 210367, at *3 (E.D. La. March, 2, 2001) ("The Court agrees that the Legislature did not intend to impose LPLA liability on entities that sell and repair vehicles."); *Masters v. Courtesy Ford Co.*, 758 So. 2d 171 (La. App. 1999) (finding that the seller of a truck was not a manufacturer under the LPLA even when performing repairs and installing parts on the truck), *vacated and remanded on other grounds*, 765 So. 2d 1055 (La. 2000). Pursuant to this jurisprudence, and the clear language of the LPLA, Whitley does not have an LPLA claim against Premier because Premier is not the manufacturer of the vehicle at issue.

Indeed, in *Alexander*, 123 So. 3d at 714, the Louisiana supreme court stated that, because an automobile dealer is not a manufacturer, "any responsibility for tort damages it may have would necessarily arise under its role as a non-manufacturing seller." A non-manufacturing seller is liable for negligence if: (1) the product is defective; (2) the seller has actual or constructive knowledge that the product it sold was defective; and (3) the seller failed to declare the defect. *Id.* However, a seller is not presumed to know of a product's defects and is not required "to inspect a product prior to sale to determine the possibility of inherent vices or defects which are not apparent." *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) (citations omitted).

7

In the complaint, Whitley alleges that the vehicle was defective, that Premier had actual or constructive knowledge of the defect by virtue of the pre-sale inspection, and that Premier failed to inform her of the alleged defect.[25] Although Whitley alleges all of the elements of a negligence claim against a non-manufacturer seller, she has no reasonable possibility of prevailing on this claim. Premier has presented uncontroverted evidence that it did not know, and could not have known, of the alleged defect in the vehicle. In his affidavit, Collins declares that Premier was not aware of any alleged defect, could not have known about any alleged defect, and would not have sold the vehicle to Whitley if it had known.[26] Moreover, Carrick, Whitley's purported expert engineer, testified at his deposition that he is not sure how Premier would have found something wrong with the vehicle, that he cannot say that Premier failed to find and fix a problem, and that he does not have an engineering opinion that Premier did something wrong.[27] Whitley has not disputed these facts. Nor has Whitley presented any evidence (even taking into account the "certified pre-owned inspection checklist") that the pre-sale inspection was for the purpose of looking for hidden defects. *See Bellow v. Fleetwood Motor Homes*, 2007 WL 1308382, at \*2 (W.D. La. Apr. 13, 2007) (finding that there was no indication that a retail seller's pre-delivery inspection of a motorhome conducted pursuant to a checklist required by the manufacturer was for the purpose of looking for hidden defects). Thus, Nissan has carried its burden of demonstrating that Whitley cannot prevail on its non-manufacturer seller claim against Premier, and that Premier was improperly joined. Therefore, the properly joined parties are completely diverse, and this Court has subject-matter jurisdiction under § 1332.

---

[25] R. Doc. 1-2 at 3.
[26] R. Doc. 1-7 at 2.
[27] R. Doc. 25-1 at 3-8.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Whitley's motion to remand is DENIED.

IT IS FURTHER ORDERED that Whitley's claims against Premier are DISMISSED with prejudice.

New Orleans, Louisiana, this 28th day of November 2018.

                                                  BARRY W. ASHE
                                                  UNITED STATES DISTRICT JUDGE